**RELIGIOUS TECHNOLOGY CENTER, a California non-profit corporation, and Bridge Publications, Inc., a California non-profit corporation, Plaintiffs,**

v.

**F.A.C.T.N.E.T., INC., a Colorado corporation; Lawrence Wollersheim, an individual; and Robert Penny, an individual, Defendants.**

No. 95–K–2143.

United States District Court, D. Colorado.

Dec. 11, 1995.

Todd P. Blakely, Robert R. Brunelli, Sheridan Ross & McIntosh, Denver, CO, Jeffrey A. Chase, Ann B. Frick, Jacobs Chase Frick Kleinkopf & Kelley, Denver, CO, Earl C. Cooley, Cooley, Manion, Moore & Jones, P.C., Boston, MA, Helena K. Kobrin, North Hollywood, CA, Elliott J. Abelson, Los Angeles, CA, for Plaintiffs.

Thomas B. Kelley, Natalie Hanlon–Leh, Faegre & Benson, Denver, CO, for Defendants.

## ORDER ON MOTION FOR RETURN OF VARIOUS ITEMS

KANE, Senior District Judge.

In the pending motion, Defendants request authorization for the Clerk of this court to return to them the documents consisting of the hard copy portion of Defendant's library and archive, which have been deposited with the Clerk pursuant to my October 3, 1995 order. In the alternative, Defendants request such documents be returned to defense counsel, to be treated as "confidential" documents as provided by the protective order entered September 8, 1995. Defendants also ask for the return of computer media that do not contain Advanced Technology Materials.

Defendants filed this motion on October 20, 1995. On October 25, 1995 I requested

Defendants to file a brief in support of their motion and established a briefing schedule for such brief, a response and a reply. I stated after examination of the briefs I would determine whether to schedule oral argument. Having reviewed the briefs, I conclude oral argument would not materially assist in resolving the issues presented.

### I. *Background.*

On August 22, 1995, pursuant to a writ of seizure and temporary restraining order, Plaintiff Religious Technology Center, Inc. ("RTC") seized documents and computer media of Defendants and impounded them in the custody of RTC's counsel. According to Defendants, the documents comprising the hard copy portion of their archive and library ("hard copy archive") contain information from FBI files, and other information concerning RTC's [1] conduct and practices.

Defendants state the only materials contained within their hard copy archive and library that Plaintiffs claim to involve both trade secret and copyrighted material ("Advanced Technology materials") are: (1) Documents which came into Defendant Wollersheim's possession in 1984 which he received from his attorney in the course of his litigation against the Church ("Wollersheim materials"), and (2) The copy of the "Fishman Declaration" containing the April 9, 1994 file-stamp of the Central District of California, received by Wollersheim at the time the affidavit was filed with that court.

The seized computer media of which Defendants seek the return consist of compact discs containing computer files, tape backups, and floppy disks. These include both data files of Defendant F.A.C.T.N.E.T. and personal information of Defendants Penny and Wollersheim.

After the hard copy archive was seized and reviewed by RTC, the original documents and copies of some but not all computer files were returned to defense counsel pursuant to a protective order entered on September 8, 1995. RTC did not return the computer hardware, hard disks, compact discs and other materials.

---

1. Although Defendants' brief states the information concerns "Defendants' conduct", I assume

this is a mistake and should read "Plaintiff's conduct."

Following an extensive evidentiary hearing on RTC's motion for a preliminary injunction, I denied the motion. My written order of September 15, 1995, required RTC to return and restore to Defendants at its own expense all seized materials. I ordered Defendants to maintain the *status quo* as to their possession of all copyrighted materials at issue and restricted them to making fair use thereof. Thereafter, RTC returned the computer hardware and altered copies of the hard drives to Defendants.

On October 2, 1995, I held a hearing on RTC's Motion Concerning Full Compliance With the Court's Order and the Order to Show Cause Re: Contempt. RTC objected to Defendants' having possession of the Advanced Technology Materials in electronic form but not to their possession of hard copy materials or computer media which did not contain the Advanced Technology.

The written order of October 3, 1995 directed:

"all seized materials, including any computer media of any nature, and any copies which have been made thereof, which are currently in the possession of either counsel for RTC or counsel for defendants be immediately placed in the custody of this court. They shall remain in the custody of this court until further order."

(Mem.Op. & Order on Various Mots., Oct. 3, 1995 at 11.)

I allowed Defendants to retain those items seized but currently in their possession subject to the provisions of the September 15, 1995 order requiring them to maintain the *status quo* as to their possession of all copyrighted materials at issue, and restricting them to only fair use thereof. (*Id.*)

I gave the parties permission to make application, through counsel, for access to the materials placed in the court's custody pursuant to the October 3, 1995 order. (*Id.* at 12.) I stated I would specify the conditions to which such access would be subject as the need arose.

I appointed Professor Gary Nutt as special master to examine all materials placed in the

court's custody and any other materials or equipment he deems necessary. (*Id.*) I requested Professor Nutt to prepare a report concerning the condition in which materials were seized and the condition in which they were returned. (*Id.*) I also asked him to restore the operations of Defendants to the full degree of function that existed before the seizure using replacement hard drives and not using or permitting access to the AT materials at issue. (*Id.*) I deferred any order on issues of contempt or sanctions until I considered Professor Nutt's report. (*Id.* at 12.)[2]

On October 4, 1995, Defendants' counsel deposited with this court the hard copy, copies of computer files and all other seized material in their possession. Pursuant to the October 3, 1995 order, Defendants only retained the limited amount of computer materials which were in their possession.

## II. *Pending Motion.*

On October 20, 1995, Defendants filed the pending motion for return of (1) all hard copies of materials seized from their library and archive and (2) all computer media that do not contain Advanced Technology materials. Defendants assert these materials are necessary for their preparation of this case, for their work in counselling ex-Scientologists and their families and for Defendants' activities protected by the First Amendment.

In their response, Plaintiffs state they do not oppose the return of original published materials directly to Defendants subject to the restrictions placed by the September 15, 1995 order. These include books and publications written by L. Ron Hubbard and publications of various Churches of Scientology.

Plaintiffs attempt to distinguish original published works from unauthorized copies of published works, which, they assert, should not be returned. These, Plaintiffs assert, consist of unauthorized hard or electronic copies of Plaintiff Bridge Publications, Inc.'s authorized representatives.

Defendants state, for the purposes of what is requested in this motion, the unauthorized

---

**2.** To date Professor Nutt has submitted four interim reports on his efforts to comply with the

October 3, 1995 order and the condition of Defendants' computers and disks.

copies of published works are those which have been transferred to electronic media for archival purposes. Defendants indicate they have already agreed, as to all works in issue, to abide by the September 15, 1995 injunction that the copyrighted materials are not to be copied, distributed or otherwise used except in the context of fair use.

Defendants maintain although they have no use for the unauthorized materials separate and apart from the authorized published copies from which the electronic media were made, it is impractical to separate the unauthorized published works from the other electronic media materials and they should therefore be returned with the authorized published works.

Defendants assert Plaintiffs impliedly conceded return of the unauthorized published works to be appropriate when they claimed to have returned exact copies of Defendants' hard drives (without the Advanced Technology) on September 25, 1995. Similarly in their motion concerning full compliance and at the hearing regarding compliance with the September 15, 1995 order, Plaintiffs asked me to approve the return of all computer media except the Advanced Technology. I agree and do not find it necessary for the purposes of this ruling to distinguish between original or authorized published works and unauthorized published works.

Plaintiffs oppose the return to Defendants of all seized hard copies of materials, including the Fishman declaration and other documents, containing Advanced Technology received by Wollersheim from his attorneys. Plaintiffs state, at the very least, a decision on return of such materials should wait until Professor Nutt has completed his investigation.

According to Plaintiffs, Defendants have presented no legitimate reason for the return of any Advanced Technology material to either themselves or their counsel. They maintain, pursuant to my October 3, 1995 order, counsel can access the seized materials as needed. They also rely on Wollersheim's admission at the preliminary injunction hearing that Defendants do not need materials containing Advanced Technology to continue their business or counselling services. Plain-

tiffs state Defendants have not shown why they need the AT to comment on the Church of Scientology.

In addition, Plaintiffs assert potential prejudice to them is immeasurable because the Advanced Technology is sacred to Scientologists and the Scientology religion, is guarded as a confidential trade secret, and public disclosure would cause Plaintiffs incalculable damage.

Defendants do not seek the return of their original hard drives nor of the one computer tape which Plaintiffs contend contains a copy of the unpublished Advanced Technology. They seek only the return of the hard copies, which consist of: (1) the Advanced Technology materials used in Wollersheim's action against the Church of Scientology of California which he obtained during the course of the proceedings in 1984; (2) the "substantially identical" materials attached to the Fishman affidavit of which Wollersheim obtained a copy when it was filed with the Central District of California.

Defendants note the Fishman affidavit was copied from the court file pursuant to the right of public access by the Washington Post Co. and remains in its possession. In addition, the Fishman affidavit and attachments have been available on the Internet.

The return of all hard copies of materials seized from Defendants library and archive to them is consistent with the September 15, 1995 order permitting Defendants to make fair use of those documents. Defendants have expressed to this court under oath their intention to follow the injunction with respect to the fair use of copyrighted materials.

In the October 3, 1995 order, I requested Professor Nutt to attempt to create two operable replacement hard drives for Defendants deleting the Advanced Technology materials at issue. This should not be read as any comment on Plaintiffs' claim as to the religious significance of those materials.

As has been recognized recently in the District Court of Virginia, addressing the RTC's efforts to enjoin the Washington Post from making fair use of AT materials:

RTC ·is essentially urging that we permit their religious belief in the secrecy of the AT documents to "trump" significant conflicting constitutional rights.... RTC asks that we allow the Free Exercise Clause to deflate the doctrine of fair use as embodied in the copyright statute, one of the very status laws upon which the RTC has based this lawsuit.

Were they arguing to a religious council placed within a theocratic government, RTC's arguments might prevail. But this is a secular branch of a secular democratic government. Our traditional separation of church from the state, combined with the heterogeneity of religious practices in this country compel us to reject the RTC's arguments.

*Religious Technology Center v. Lerma*, 908 F.Supp. 1353 (E.D.Va.1995).

The Supreme Court has stated:

The government's ability to enforce generally applicable prohibitions of socially harmful conduct ... "cannot depend on measuring the effects of a governmental action on a religious objector's spiritual development." To make an individual's obligation to obey such a law contingent upon the law's coincidence with his religious beliefs ...—permitting him, by virtue of his beliefs, "to become a law unto himself,"—contradicts both constitutional tradition and common sense.

*Employment Division, Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 885, 110 S.Ct. 1595, 1603, 108 L.Ed.2d 876 (1990) (citations and footnote omitted).

Nor is it within my purview to assess the degree of importance to the Scientology religion of maintaining the AT materials secret.

It is no more appropriate for judges to determine the "centrality" of religious beliefs ... in the free exercise field, than it would be for them to determine the "importance" of ideas ... in the free speech field. What principle of law or logic can be brought to bear to contradict a believer's assertion that a particular act is "central" to his personal faith?

*Id.* at 886–87, 110 S.Ct. at 1604–05.

There is no reason to delay the return of these hard copies to Defendants pending the completion of Professor Nutt's investigation. Defendants' allegations concerning the condition of seized materials returned to them by RTC pertained to computer media containing the Advanced Technology materials, rather than hard copies. Only computer media containing the Advanced Technology materials form the subject of Professor Nutt's inquiry.

Accordingly, I order the Clerk of this court to return to Defendants all hard copies of seized materials subject to the restrictions contained in my September 15, 1995 order, namely, that Defendants may make only fair use of all copyrighted materials and may not make any additional copies of the materials or transfer or publicize them in any manner inconsistent with fair use.

In making this order, I do not disturb the October 3, 1995 order placing Defendants' Exhibit CC submitted to this court in the course of the preliminary injunction proceedings under seal.

Similarly, there is no legitimate basis for not returning to Defendants the computer media that do not contain Advanced Technology materials. These include compact discs containing computer files, tape backups and floppy disks containing data files and personal information of Messrs. Penny and Wollersheim. Their return is likewise subject to the restrictions described above contained in the September 15, 1995 order.

Of course, any materials required by Professor Nutt in fulfilling his duties as special master shall be retained by or delivered to him at his instance.

Any use of the returned materials by counsel for the defense of this litigation shall be subject to the September 8, 1995 protective order.

In addition to the above, I grant Defendants' request that their counsel may use the returned materials for the defense of the litigation pending in the Eastern District of Virginia, *Religious Technology Center, Inc. v. Lerma*, 908 F.Supp. 1353, pursuant to the

nearly identical protective order entered in that case, a copy of which is attached to Defendants' reply as Exhibit A.

Accordingly,

IT IS ORDERED THAT Defendants' Verified Motion for the Return of (1) All Hard Copies of Materials Seized from the Defendant's Library and Archive (2) All Computer Media that do not Contain Advanced Technology Materials is GRANTED.